# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Regina Berglass Heisler, as the Executrix of the Succession of Frederick P. Heisler, by Henry L. Klein, 201 St. Charles Avenue, Suite 2501, New Orleans LA, DC Bar LA0003<br><br>*Plaintiff*<br><br>versus<br><br>Ramona D. Elliott, Acting Director of the Executive Office for United States Trustees, 441 G. Street NW, Suite 6150, Washington, DC 20548<br><br>*Respondent* | CIVIL ACTION |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR WRIT OF MANDAMUS AND REQUEST FOR DECLARATORY JUDGMENT

Regina Berglass Heisler, as the Executrix of the Succession of Frederick P. Heisler, files her Original Complaint for a Writ of Mandamus, naming Ramona D. Elliott, Acting Director of the Executive Office for United States Trustees as Respondent, also seeking a Declaratory Judgment as to Respondent's duty....

> "...to promote the integrity and efficiency of the bankruptcy system for the benefit of all stakeholders — debtors, creditors, and the public..."

1

### I.   JURISDICTION AND VENUE

1. Pursuant to 28 U.S. Code § 1361, district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

2. The United States Trustee Program is a component of the Department of Justice responsible for overseeing the administration of bankruptcy cases and private trustees under 28 U.S.C. § 586 and 11 U.S.C. § 101, et seq.

3. Respondent Elliott's Executive Offices are located at 441 G. Street NW in the District of Columbia, making this a court of proper venue.

### II.   EXTRAORDINARY REMEDY IN RE: BANKRUPTCY FRAUD

4. The United States Supreme Court, in *Cheney v. United States District Court*, 542 U.S. 367 (2004), set forth three factors at Section III of the 7-2 opinion:

> As the writ of mandamus is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue. *First*, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires — a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. *Second*, the petitioner must satisfy the burden of showing that his right to issuance of the writ is "clear and indisputable." *Third*, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

5.      At the threshold, it is vital to recognize United States Trustees as **Bankruptcy Watchdogs and Appellate Advocates**[1]: (a) the first overarching goal is "...to ensure that justice is done and the law is followed..." and (b) "...creditors must deal fairly with debtors..."

6.      Just as the Federal Advisory Committee Act in _Cheney_ was established to advise the executive branch, the office of United States Trustees was established to advise the judicial branch in bankruptcy matters.

### III.    CHRONOLOGY OF FRAUD

7.      This case involves a $15 million fleecing of the widow-Heisler, a _victim_ of the $1 billion collapse of First NBC Bank in New Orleans, presently proceeding in two multi-defendant Criminal Cases at _United States v. Gary Gibbs_, 20-CR-60 and _United States v. Ashton Ryan_, 20-CR-65 in the Eastern District of Louisiana.

8.      On April 28, 2017, the First NBC Bank in New Orleans was closed by regulators due to a loan-kiting scheme wherein customers of the bank were used as _Nominee Borrowers_ to conceal the bank's unprecedented growth and NASDAQ rise.

9.      Ten days post-collapse, Succession lawyer Henry Klein attempted to pay the FDIC as liquidator $600,000 owed by the Succession, only to be told the debt was $9.8 million, a number bloated by the criminals indicted in _Gibbs_ and _Ryan,supra_.

---

[1]     _P. Matthew Sutko, Associate General Counsel for Appellate Practice, Saleela Khanum Salahuddin, Trial Attorney, Executive Office for United States Trustees, Washington, D.C._

10. Regina Heisler, then a 75-year-old widow with no business or banking acumen, was unaware of how or why the debt was bloated to $9.8 million and the FDIC would **not** provide bank records because it was "...packaging loans..." to be sold in a secondary market reminiscent of the Resolution Trust debacle in the 1980s.

11. As it eventuated, con-artist Gary Gibbs, **the** key player in the loan-kiting scheme, defrauded the widow Heisler into signing paperwork used to deceive regulators[2]; in the criminal case against Gibbs (who has pleaded guilty), Heisler is identified as *Nominal Borrower F* because she was not a real borrower.

12. On November 13, 2017, the FDIC sold $800,000 million of FNBC notes to Girod LoanCo, a Delaware LLC created for the sole purpose of purchasing debt at deep discounts and enforcing payment at unconscionably-higher amounts.

13. The sale of FNBC debt to Girod violated a September 2, 2009 FDIC Policy Statement *prohibiting* sales of failed bank assets to "...silo-structured..." entities located in secrecy jurisdictions such as the Cayman Islands[3].

14. The rationale against opaque structures is that they avoid detection by United States authorities and protect financial terrorism by vulture-creditors such as Girod, described in litigation against the widow Heisler thus:

---

2   The easiest reading of the plight of debtor Regina Heisler is made Exhibit A hereto.

3   Final Statement of Policy on Qualifications for Failed Bank Acquisitions, Federal Register Vol 74, No. 169, September 2, 2009.

> Girod is wholly-owned by a limited liability company that is owned by three other limited liability companies. One of the members of the three limited liability companies is a limited partnership formed under the laws of the State of Delaware (the "DE LP"). To Girod's knowledge, one of the limited partners of the DE LP is a limited liability company formed under the laws of the State of Louisiana; the members of the LA LLC are inter vivos trusts incorporated under the Louisiana Trust Code (the "Trusts") and the settlors, trustees and beneficiaries of the Trusts are individuals who reside in Louisiana.

16. Realistically, Girod is a phantom that cannot be found as it takes millions of Louisiana dollars to the Cayman Islands.

### IV. THE HEISLER BANKRUPTCY CASE

17. Armed with fraudulently-bloated paper, Girod hired Kean Miller, LP, a prestigious law firm in New Orleans to enforce the debt against the *entire* $15 million estate that Frederick Heisler left his heirs.

18. For over a year, family-lawyer Henry Klein attempted to obtain evidence supporting the alleged debt and the price paid by Girod for the litigious rights, protected by Louisiana laws similar to common-law champerty prohibitions.

19. Unable to fend Girod away, Heisler was forced to file a *pro se* Chapter 11 petition on August 27, 2020, at docket 2020-11509[4].

20. On September 23, the bankruptcy court converted the case, *sua sponte,* and Wilbur "Bill" Babin was appointed Chapter 7 Trustee.

---

4  The details necessary to understand the issues are best laid out in Exhibit A.

21. On October 21, Girod filed Proof of Claim 3 in the amount of $7,869,608, supported by bogus notes Regina Heisler was duped into signing *without* consideration; to this day, the bankruptcy court has yet to require proof of consideration.

22. On November 20, family lawyer Henry Klein, as Creditor-4, filed an objection to Girod's POC-3, calling the filing manifest "...bankruptcy fraud..."

23. On multiple occasions, efforts were made to the local United States Trustee to enforce 28 U.S.C. § 586, which provides, in pertinent part, that:

> **Each United States trustee, within the region for which such United States trustee is appointed, shall—**
>
> **(3) supervise the administration of cases and trustees in cases under chapter 7, by whenever the United States trustee considers it to be appropriate—**
>
> **(F) notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action;**

24. Similar supplications were made to the District of Columbia Office of the United States Trustee, which deferred to the local United States Trustee and no action was taken.

25. From November 20, 2020 until August 13, 2021, the bankruptcy court refused to hold a single evidentiary hearing wherein Regina Heisler could testify that she did not receive **ONE RED CENT** in connection with the loan-kiting scheme that broke the bank.

26. On August 13, 2021, the Bankruptcy Court ruled that Girod's POC-3 was allowed "...in its entirety...", stating that **Klein and Heisler are not Entitled to an Evidentiary Hearing** because all of Heisler's defenses were barred by *res judicata* principles.

27. Directly on point *against* blind acceptance that *res judicata* applies was the case of <u>Brielle's Florist & Gifts v. Trans-Tech, Inc.</u>, 74 So. 2nd 833 (2011), which requires a court faced with the defense of *res judicata* to hold an evidentiary hearing and consider the *entire record* in the case which is alleged to bar the second case[5].

## V. SERIAL VIOLATIONS OF BANKRUPTCY RULE 9013-1(G)

28. The Bankruptcy Court's refusal to hold evidentiary hearings with sworn testimony was in violation of Local Bankruptcy Rule 9013-1(G), which provides:

> **(G) Matters Requiring Special Setting. Matters which are not considered routine, and therefore may not be heard on motion day, include . . . . matters requiring (1) the presentation of evidence or (2) oral argument exceeding twenty(20) minutes. Non-routine matters must be scheduled for hearing by contacting chambers.**

29. Without an evidentiary hearing, evidence was *never* introduced pursuant to the Federal Rules of Evidence; when the allowance of POC-3 "...in its entirety..." was entered, the record was void of evidence, as noted by the <u>Brielle's</u> court, at 836 under the title **"...*EVIDENCE NOT FILED INTO THE RECORD...*":**

---

5   At all times, Henry Klein communicated with both the local United States Trustee and the United States Trustee in the District of Columbia *without* any success.

The Supreme Court addressed the ability of the Courts of Appeal to consider evidence not formally filed into the record in <u>Denoux v. Vessel Management Services, Inc</u>, 983 So.2d 84. The Supreme Court stated: Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence.

30. By the time POC-3 was allowed "...in its entirety..." Regina Heisler had been able to hire a bankruptcy lawyer, who filed a compelling Objection to POC-3 at Docs. 348, 349, 350; on August 26, a joint appeal was taken to the District Court at Docket 21-1636.

31. On March 29, *without* any evidence in the record because there was *never* an evidentiary hearing, the District Court affirmed the Bankruptcy Court, holding that the Bankruptcy Court "...did not abuse its discretion in determining an evidentiary hearing was not necessary to decide the claim objection..."

**Thus, Girod LoanCo, LLC a vulture-creditor which paid less than $138,000 for the Heisler debt, was fully awarded the $7,869,608 fraudulent proof of claim while the local United States Trustee and the national United States Trustee did nothing to protect the integrity of the process[6].**

---

6   The Heislers owed $600,000, which they tried to pay. Girod paid 23-cents, or $138,000.

8

## VI. ACCELERATED LIQUIDATIONS

32. Long before POC-3 was vetted, the Chapter 7 Trustee began to liquidate Heisler Property; for that to happen, Girod moved for a lifting of the automatic stay so it could proceed with foreclosures and seizures on a fraudulent proof of claim; on January 19, 2021, the Bankruptcy Court GRANTED the lift-stay motion.

33. Five days prior to the lifting of the stay, the United States Supreme Court decided *City of Chicago v. Fulton*, 592 U.S. \_\_\_\_ 2021, raising questions that dealt with the Trustee's accelerated liquidations.

34. Heisler had already sought Supreme Court review at Docket 20-1361, and based on Justice SOTOMAYOR's concurring opinion, a Rule 15.8 Supplement was filed on April 12, 2021, Exhibit B, from which we cut-and-paste the following:

   1. Where a creditor commences seizures of real estate and $2.1 million *in custodia legis* pre-petition, but has not obtained possession, does §362(a) stay post-petition *acts* to enforce any lien against property of the estate and any *act* to collect a claim against [a] debtor that arose prior to bankruptcy proceedings?

   2. Can the trustee seek an expedited §542(a) turnover to enforce claims subject to adversary proceedings not commenced — much less resolved — diminishing or extinguishing the "...maximizing value..." which §542(a) affords for all parties, an issue left unanswered in *Chicago v. Fulton*?

35. Our last paragraph is worth repeating:

**This case represents compelling issues as to vulture funding, state door-closing statutes and the ruthless bilking of a victim of one of the greatest bank failures in history.**

## VII. DECLARATORY JUDGMENT

36. Applying the language by Justice O'CONNOR in *Wilton v. Seven Falls*, 515 U.S. 277 (1995) at 288,

> "...by the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants..."

37. By any measure, Regina Heisler qualifies; the extraordinary circumstances are inexplicable; any average reasonable man knowing all the facts would harbor doubts as to the Bankruptcy Court's impartiality, yet the District Court has left the travesty of justice stand.

38. The questions Regina Heisler and her beleaguered lawyer pose are these:

> [1] *HOW MUCH BANKRUPTCY FRAUD DOES IT TAKE FOR THE UNITED STATES TRUSTEE IN THE DISTRICT OF COLUMBIA TO STEP IN AND PROTECT THE INTEGRITY OF THE PROCESS?*

> [2] *IS THERE A BETTER PLACE FOR REGINA HEISLER TO FIND SUCCOR THAN 441 G. STREET NW IN THE DISTRICT OF COLUMBIA?*

> [3] *IS IT NOT "CLEAR AND INDISPUTABLE" THAT A VICTIM OF A HEIST TO MATCH THE GREAT BRINKS ROBBERY, WHO RECEIVES **NOT ONE RED CENT** IN THE FIASCO WILL LOSE THE $15 MILLION HER HUSBAND LEFT TO UNKNOWN VULTURES AT THE UGLAND HOUSE IN THE CAYMAN ISLANDS?*

## VIII. ABA FORMAL OPINION 491

39. Overarching the travesty Regina Heisler presents to any Court of Equity pursuant to *Pepper v. Litton*, 307 U.S. 295 (1939) is the fact that the prestigious law firm that represented the vulture-creditor mocked ABA FORMAL OPINION 491, which warns lawyers not to assist potential clients clearly intent on commiting fraud or crime.

40. Since "...the integrity of the bankruptcy system..." is **the** goal the bankruptcy watchdogs strive to protect, is not ABA 491 paramount in the analysis?

41. Although there may still be time for the District Court *a qua* to reverse the damage at Docket 20-11509, Regina Heisler is compelled to look to the Honorable Ramona D. Elliott, acting Director of the Executive Office for United States Trustees to heed Justice FRANKFURTER's admonition in *Offutt v. United States*, 348 U.S. 11 (1954), that "Justice must satisfy the appearance of justice..."

## IX. RELIEF SOUGHT

42. Pursuant to 28 U.S.C. § 1651 and the inherent power that all courts of law have to ensure the integrity of their process, *Chambers v. NASCO*, 502 U.S. 32 (1954), this Court is respectfully asked to *mandate*, empower and direct the United States Trustee to take all actions necessary to reverse the damage caused by "...standing idly by..." while bankruptcy fraud was visibly occurring.

## X. 28 U.S.C. § 586 PROSECUTION

...

43. Of greatest import, this Court is respectfully asked to ***mandate***, empower and direct the Local United States Trustee to refer this matter to the United States Attorney for prosecution of bankruptcy fraud and to assist in the prosecution process against Girod LoanCo, its affiliates, agents, aiders, abettors and attorneys.

Respectfully Submitted,

/s/  Henry L. Klein
Henry L. Klein (DC BAR LA0003)
201 St. Charles Avenue
Suite 2501
New Orleans, LA 70170
(504) 439-0488
henryklein44@gmail.com